Filed 3/30/26  In re J.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E086746 |
| Plaintiff and Respondent, | (Super.Ct.No. J305241) |
| v. | OPINION |
| K.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Dismissed.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and Appellant, K.M.

Laura Feingold, County Counsel, and Helena C. Rho, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

K.M. is the mother of J.C. J.C. was declared a dependent of the juvenile court pursuant to Welfare and Institutions Code[1] section 300, subdivision (b), shortly before he turned 18 years old. In a dispositional hearing held after J.C. turned 18 years old, Mother requested the juvenile court grant her reunification services for the first time pursuant to section 361.6, which generally provides that the juvenile court "may order family reunification services to continue for a nonminor dependent" and parents under specified circumstances. (§ 361.6, subd. (a).) The juvenile court denied the request, and Mother appeals from that order.

On appeal, Mother argues the juvenile court erred as a matter of law in its interpretation of the authority granted under section 361.6. In response, San Bernardino County Children and Family Services (CFS) contends that Mother lacks standing to appeal and that the juvenile court did not err in its interpretation or application of the statute. As we explain, discretionary services offered pursuant to section 361.6 are not intended to further any legal or personal interest of a nonminor dependent's parents. Thus, we agree with CFS that Mother lacks standing, and we dismiss the appeal.

## II. BACKGROUND

In July 2025, J.C.'s siblings reported that Mother and her husband had been physically abusing J.C. J.C. was 17 years old at the time but suffered from serious medical conditions that rendered him immobile and nonverbal.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

On July 15, 2025, CFS filed a dependency petition on behalf of J.C. At the request of all parties, the juvenile court held an expedited jurisdictional hearing on July 25, 2025 so that the juvenile court could take jurisdiction prior to J.C.'s 18th birthday, rendering J.C. potentially eligible for extended foster care placement. Mother admitted a jurisdictional allegation that she failed to provide proper medical and nutritional care to J.C.; the juvenile court found true the admitted allegation; the juvenile court dismissed all other allegations upon stipulation of the parties; and the juvenile court declared J.C. a dependent of the juvenile court pursuant to section 300, subdivision (b).

In July 2025, J.C. turned 18 years old.

On August 21, 2025, the juvenile court held a dispositional hearing. Mother requested the juvenile court order reunification services, purportedly under the authority of section 361.6, subdivision (a). CFS opposed the request, arguing that reunification services could not be ordered for the first time under section 361.6 after a dependent child turns 18 years old. The juvenile court denied the request, observing that the statutory language only provided for continuation of reunification services and did not provide authority to order reunification services for the first time after a dependent child becomes an adult.

Mother appeals from the dispositional order, challenging only the juvenile court's denial of reunification services.

3

III.  DISCUSSION

CFS argues that we need not reach the substance of Mother's arguments because she lacks standing to challenge the juvenile court's denial of reunification services on appeal.  We agree.

"In juvenile proceedings, only a party aggrieved by an order has standing to appeal.  [Citation.]  'To be aggrieved, a party must have a *legally cognizable interest* that is injuriously affected by the court's decision.' "  (*In re B.S.* (2021) 65 Cal.App.5th 888, 893.)  "Whether a person has standing to raise a particular issue on appeal depends upon whether the person's rights were injuriously affected by the judgment or order appealed from."  (*In re A.K.* (2017) 12 Cal.App.5th 492, 499.)  "A person does not have standing to urge errors on appeal that affect only the interests of others.  [Citation.]  Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights."  (*Ibid.*)

As relevant here, a parent's individual interest in a dependency proceeding is the right to " 'companionship, care, custody and management' " of the dependent child.  (*In re K.C.* (2011) 52 Cal.4th 231, 236.)  Thus, the parent's interest in reunification services is " 'to facilitate the return of a dependent child to parental custody.' "  (*In re Jaden E.* (2014) 229 Cal.App.4th 1277, 1281.)  Consistent with this understanding, California courts have repeatedly declined to interpret dependency statutes in a manner that would extend a right to reunification services where such services would not further any right to custody.  (*In re Jodi B.* (1991) 227 Cal.App.3d 1322, 1329 [A stepparent who has not adopted a child "has no independent right to services designed to return the child to

4

parental custody."]; *In re J.B.* (2025) 109 Cal.App.5th 133, 139 [A de facto parent has no right to custody or reunification services.](Fourth Dist., Div. Two}; *In re Zacharia D.* (1993) 6 Cal.4th 435, 451-452 [Biological fathers who do not obtain presumed father status entitling them to custody do not qualify as parents entitled to receive reunification services.]; *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1271 [Reunification services are not required for noncustodial parents who do not seek to regain custody of a dependent child.].)

While a parent has a legally protected interest in pursuing custody of his or her child while the child is a minor, the parent's *legal* interest in the companionship, care, and custody of his or her child is "eliminated entirely" when the child turns 18 years old. (*In re J.C.* (2014) 222 Cal.App.4th 1489, 1493.) This is because "[a] person is considered a minor under the laws of California until he or she turns 18, and after that is considered to be an adult." (*In re Holly H.* (2002) 104 Cal.App.4th 1324, 1334, fn. 4.) "Although maturity is not achieved overnight, when one reaches majority[,] the law treats the young adult as a responsible person entitled to make independent decisions in conducting his or her affairs." (*Id.* at p. 1336.)[2] As a result, the dependency statutes "d[o] not allow a parent to reunify with a dependent child who has turned 18 because a

---

[2] This principle is recognized even where, as here, the adult may be severely disabled and in need of a future conservator. Conservatees "are adults, and the statute treats them as such even while investing a conservator and the court with certain powers to assist them where they are unable to assist themselves. . . . [¶] An adult conservatee's disability does not put them in the legal position of a minor." (*Conservatorship of Navarrete* (2020) 58 Cal.App.5th 1018, 1031.)

parent cannot have physical custody of an adult." (*In re K.L.* (2012) 210 Cal.App.4th 632, 640.)

Thus, when J.C. turned 18 years old, he could not, as a matter of law, be returned to Mother's custody or "reunify" with her. By the time of her request, Mother had no legally protected interest that would be furthered by reunification services, and she could not be considered aggrieved by an order denying such services.

Mother concedes that her legally cognizable interest in J.C.'s care and companionship was eliminated at the time J.C. turned 18 years old, but she argues that section 361.6 "creates a legally cognizable interest in reunification services to confer standing to appeal." We are unpersuaded by this argument.

Whether a statute confers standing on a party is a matter of statutory interpretation, which varies according to the intent of the Legislature in enacting the statute. (*Guracar v. Student Loan Solutions*, *LLC* (2025) 111 Cal.App.5th 330, 342-343.) When considering the interpretation of a statute, " ' " ' "our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." ' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) " ' " ' "We begin by examining the statute's words, giving them a plain and commonsense meaning" ' " ' "; " ' "we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute" ' " ' "; and we " ' harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*)

It is true that section 361.6 provides authority for the juvenile court to order a continuation of reunification services for a specified period of time after a dependent child turns 18 years old.  (§ 361.6., subd. (a).)  However, the plain words of the statute suggest that the continuation of services under section 361.6 was not intended to extend, advance, or preserve any *parental* right.  Under section 361.6, the continuation of reunification services is authorized only if the juvenile court finds there is a "substantial probability that the nonminor dependent will be able to *safely reside in the home of the parent* . . . by the next review hearing."  (§ 361.6, subd. (a), italics added.)  In contrast, the continuation of reunification services for a minor dependent is authorized if the juvenile court finds there is "a substantial probability that the child will be *returned to the physical custody* of the child's parent . . . within the extended time period."  (§ 361.5, subd. (a)(3)(A).)  "When different terms are used in parts of the same statutory scheme, they are presumed to have different meanings."  (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1130.)  The use of different terminology in this case clearly evidences a change in legislative purpose.  Notably, section 361.6 no longer references any custodial right of the parent and makes no reference to the relational status of the parent and nonminor dependent.  Instead, the plain words of the statute suggest the purpose of continuing services is to advance the nonminor dependent's interest in securing a safe residence.

Our interpretation is consistent with the overall statutory purpose of nonminor dependencies.  The purpose of the nonminor dependency statutes is to "facilitate the transition to adulthood of persons who entered the dependency system before age 18." (*In re David B.*(2017) 12 Cal.App.5th 633, 650, overruled in part by *In re D.P.* (2023)

7

14 Cal.5th 266, 283; *In re Aaron S.* (2015) 235 Cal.App.4th 507, 515-516; *In re A.A.* (2016) 243 Cal.App.4th 765, 775.) Consistent with this purpose, the statutory scheme requires the relevant county welfare agency to provide services to a *nonminor dependent* that are intended to assist with the nonminor dependent's transition to a living arrangement outside of continued foster care, including assistance with obtaining health insurance, securing housing, obtaining employment, and assistance with obtaining further education and financial aid. (*In re Holly H.*, *supra*, 104 Cal.App.4th 1324, 1331; § 391, subd. (b).) Thus, interpreting section 361.6 as a statutory mechanism to facilitate the nonminor dependent's interest in securing a stable living arrangement is consistent with the overall statutory scheme.

Further, we are called upon to interpret statutes in a manner that harmonizes the statute with the statutory scheme as a whole. (*In re Greg F.* (2012) 55 Cal.4th 393, 407.) As relevant here, "[t]he statutory scheme governing nonminor dependents . . . makes clear that persons over age 18 are adults, even if they fall within the juvenile court's continuing dependency jurisdiction." (*In re David B.*, *supra*, 12 Cal.App.5th at p. 650; § 303, subd. (d)(1) [Nothing in the Welfare and Institutions Code shall be construed to "otherwise abrogate any other rights that a person who has attained 18 years of age may have as an adult under California law."].) As an adult, a nonminor dependent is permitted to initiate termination of dependency jurisdiction independent of the parent's cooperation or consent. (*In re M.W.* (2018) 26 Cal.App.5th 921, 928 [juvenile court cannot continue jurisdiction where " 'the nonminor does not wish to remain subject to dependency jurisdiction' "]; § 391, subd. (e)(1)(A).) And a hearing to terminate

8

jurisdiction over a nonminor dependent does not require the juvenile court to consider any factors related to any *parental* interest. (Rules of Court, rule 5.555(d)(1) [listing required findings].) It would be incongruous to conclude that section 361.6 confers a parental right to reunification services where the rest of the statutory scheme clearly provides that juvenile court jurisdiction may be terminated upon the request of the nonminor alone without consideration of the impact such termination may have on a parent receiving services.

Because we conclude that section 361.6 is not intended to advance any parental interest or right, Mother cannot be considered aggrieved by a denial of reunification services under that statute such that she has standing to appeal[3]. Accordingly, we conclude that Mother lacks standing to pursue this appeal.

---

[3] We also observe that, even if we assumed Mother had standing to appeal, she has not established entitlement to any relief on appeal. Even assuming section 361.6 authorized the trial court to grant Mother reunification services, any order of services under the statute is explicitly contingent on the agreement of the nonminor dependent. (§ 361.6, subd. (a).) The record shows that, at the time of the dispositional hearing, minor's counsel declined to take a position regarding whether J.C. was in agreement with Mother's request for services, specifically stating that J.C. "is not siding with Mother or County Counsel at this time"; did not "have enough information at this moment to go one way or the other"; and the guardian ad litem had not made a decision as to what would be in the best interests of J.C. regarding the services requested by Mother. Thus, the juvenile court could not have granted Mother reunification services under section 361.6, even if it believed the statute granted general authority to do so.

## IV.  DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

RAMIREZ _____
P. J.


McKINSTER _____
J.

10